UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOAN S.,[1]

    **Plaintiff,**

v.                                                           Civil Action No. 2:21cv517

**KILOLO KIJAKAZI,**
*Acting Commissioner of*
*Social Security,*

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Joan S. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") under the Social Security Act. Specifically, Plaintiff alleges that the Commissioner's Administrative Law Judge ("ALJ") improperly analyzed opinion evidence from one of Plaintiff's treating providers. As a result, she argues that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report finds no error in the ALJ's assessment of the evidence and therefore recommends that the court grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## I.     **PROCEDURAL BACKGROUND**

On September 4, 2018, Plaintiff filed for DIB. (R. 120). Plaintiff alleged disability beginning September 15, 2015, based on depression, anxiety, herniated discs, back pain, and severe acid reflux resulting in esophageal scarring. (R. 27-35). The state agency denied her application initially and on reconsideration. (R. 121-25; 130-38). Plaintiff requested an administrative hearing, which was held October 28, 2020, and at which Plaintiff was represented by counsel. (R. 40-69). An impartial vocational expert ("VE") also testified. Id. At the hearing Plaintiff amended her alleged onset date to September 18, 2017. (R. 23, 44). On November 6, 2020, ALJ William Pflugrath denied Plaintiff's claims for DIB, finding she was not disabled during the period alleged. (R. 22-34). On February 10, 2021, the Appeals Council denied Plaintiff's request for review. (R. 1).

On September 17, 2021, Plaintiff filed her complaint in this court. Compl. (ECF No. 1). Plaintiff seeks judicial review of the Commissioner's final decision that she was not entitled to an award of DIB, claiming that the Commissioner's conclusions are "not supported by substantial evidence and are contrary to law and regulation." Id. ¶ 8 (ECF No. 1, at 2). On March 30, 2022, Plaintiff moved for summary judgment. (ECF No. 15). Plaintiff argues that the case should be reversed or remanded because the ALJ improperly analyzed the medical opinion evidence, particularly the opinions offered by her treating physician, Dr. Quidgley-Nevares. Pl.'s Br. Supp. Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 16, at 1, 10-16). On Aril 28, 2022, the Commissioner opposed Plaintiff's motion and moved for summary judgment. (ECF No. 18). The Commissioner argues that substantial evidence supports the RFC, and that the ALJ properly weighed the medical opinion and other evidence in the record. Mem. Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 19, at 1). Plaintiff replied —reiterating her claims of error

in the evaluation of the opinion evidence. Pl.'s Reply (ECF No. 20, at 1). After a review of the record, this Report considers each of these arguments.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Treatment

Plaintiff's arguments in this court do not require a complete review of her medical history as she disputes only the ALJ's assessment of the opinion testimony from her treating physician. The records bearing on that assessment are summarized below.

#### 1.  Treatment Prior to Alleged Onset Date (November 2016 – September 2017).

As relevant to matters before this court, on November 14, 2016, Plaintiff presented at Sentara Norfolk General Emergency Department with a complaint of left knee pain, which she attributed to bursitis. (R. 622). Images taken that day showed arthritis, but no acute fracture or subluxation. (R. 715). On exam, her providers noted swelling, tenderness, and a reduced range of motion. (R. 623-24). She was discharged in ambulatory condition. (R. 623).

The following March 2017, Plaintiff again presented to the emergency department with complaints of dizziness and pelvic pain following an upper respiratory infection. (R. 387). She received an abdominal C.T. scan which revealed a fat-containing hernia and was discharged home after reporting she felt better. (R. 391, 478). Late in 2017, Plaintiff underwent a total laparoscopic hysterectomy, during which her surgeons discovered a large abdominal hernia, which was repaired with surgical mesh in a later procedure. (R. 379, 374-75).

From August 4, 2017 to April 16, 2018, Plaintiff treated for low back pain with Douglas Dean, D.O. (R. 855-92). During his initial examination, Dr. Dean found tenderness and an abnormal gait, as well as knee pain with range of motion. (R. 886). He prescribed Gabapentin. (R. 887). When Plaintiff returned for follow-up, she reported that the Gabapentin had helped her leg pain, but she still had low back pain. (R. 881). On exam that day, Dr. Dean noted tenderness

3

along her spine with some radiation to the left paraspinals. (R. 882). She retained functional range of motion, and her gait and station were normal. Id.

## 2. Treatment Between Onset and Date Last Insured ("DLI") (September 2017 – December 2019).

On September 18, 2017 (Plaintiff's amended onset date), Plaintiff received an MRI which showed left central to foraminal suspected disc protrusion with at least mild spinal canal stenosis, and multi-level mild foraminal stenosis. (R. 694). In October 2017, following her hernia surgery, Plaintiff was cleared by her surgeon, Jeffrey Riblet, M.D., to return to work. (R. 361). Later that month she returned to Dr. Dean with reports of pain in her lower back, worse on the left. (R. 873). Dr. Dean assessed tenderness to palpation, and pain with hip flexion and extension—but found her strength and sensation intact. (R. 874-75).

In January 2018, Plaintiff again reported to Dr. Dean that her symptoms were stable. (R. 862). She continued to have pain with range of motion and an abnormal gait and stance. (R. 863-64). But she was able to rise from seated to standing with relative ease, and a straight-leg raise test was negative. Her strength and sensation remained intact. Id.

Beginning in July 2018, Plaintiff consulted Antonio Quidgley-Nevares, M.D. for management of her chronic low back pain. (R. 844-50, 1272-79, 1370-77). Dr. Quidgley-Nevares' exam on July 9 found tenderness to palpation and a decreased range of motion, as well as pain and limited reaching ability in her shoulders, but 5/5 muscle strength in her lower extremities. (R. 846). On May 8, 2019, Dr. Quidgley-Nevares and his physician's assistant, Ms. Villaflor-Zitouni, again found Plaintiff had decreased range of motion in her shoulders and low back but full muscle strength in her legs. (R. 1274). They recorded similar or identical findings

on several subsequent visits. (R. 1372, 1376). They diagnosed arthritis of the knee, lumbar radiculopathy, cervicalgia, lower back pain, and chronic pain syndrome. (R. 1274, 1372).

During exams in August and November 2019, Rice Risedajao, M.D. found lumbosacral tenderness, but a full range of motion in all directions. (R. 1346, 1340-41). Plaintiff also treated for carpal tunnel syndrome with Sun D. Kwon, M.D. (R. 950-55). She reported pain in her low back and left arm, as well as wrist, hip, and shoulder pain. (R. 950, 954). A nerve conduction study produced evidence of moderate carpal tunnel syndrome (R. 950).

### 3. Treatment After DLI (January – July 2020).

After Plaintiff's date last insured, she continued to treat with Dr. Quidgley-Nevares and P.A. Villaflor-Zitouni. On January 13, 2020, they recorded findings similar to her previous visits, including decreased lumbar and shoulder range of motion but intact muscle strength. (R. 1368). She was continued on medications which, they recorded, she tolerates and benefits from. (R. 1368). In April 2020, she appeared for a telephone consult (arranged as a result of the pandemic) during which she reported no change in her symptoms, and still tolerating and benefiting from her pain medication. (R. 1362-64). At a later telephone consult in June 2020, Plaintiff reported essentially the same symptoms but worsening hip pain. (R. 1399). On July 9, 2020, Plaintiff returned for follow-up of her chronic pain. (R. 1395). She described her pain as a "constant 7/10 ache," and stated she continued to have low back pain that radiated to her lower extremities. Id. But her sleep was good, and she tolerated medication well, with no oversedation. Id. She reported no difficulties driving, no falls, and no need for assistance with ambulation or activities of daily living. Id. Plaintiff's exam that day revealed decreased strength and sensation in her right arm, and an antalgic gait. (R 1398).

5

**B.     Opinion Testimony**

**1.     Antonio Quidgley-Nevares, M.D.**

On June 11, 2020, Dr. Quidgley-Nevares completed a medical source statement. (R. 1389-92). The statement was a check-the-box form asking for opinions based upon the patient's present medical condition. Id. The providers completing the form[2] checked boxes indicating that the Claimant would be unable to complete tasks for 10 to 20 percent of a workday, off task for more than one-hour per workday and absent four days per month. (R. 1389). With respect to her physical capacities, the providers checked boxes corresponding with the Claimant's ability to sit no more than three hours and stand/walk no more than two hours in a workday. Id. They also checked boxes reflecting the Claimant's ability to lift and carry up to 10 pounds occasionally and stated that the Claimant could not push or pull with arm or leg controls and had to avoid exposure to temperature changes, pulmonary irritants, unprotected heights, machinery, and driving. (R. 1389, 1391).

**2.     State Agency Physicians**

During her initial Agency evaluation in May 2019, Robert McGuffin, M.D. reviewed the medical record and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and stand, walk, and sit for six hours in an eight-hour workday. (R. 94-95). He found that Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl, but never climb ladders, ropes, or scaffolds. (R. 95). He noted that Plaintiff's postural limitations related to

---

[2] It's not clear which provider – Dr. Quidgley-Nevares or P.A. Villaflor-Zitouni – completed the form. Both names appear on the form which appears to be signed by P. A. Villaflor-Zitouni. (R. 1392). The ALJ described the opinion as coming from Dr. Quidgley-Nevares. (R. 32). Because both providers treated Plaintiff at the same time, for the same impairments, it is not necessary to resolve the ambiguity.

6

chronic back pain and degenerative disc disease, but physical exams found 5/5 muscle strength and a normal gait. Id.

On reconsideration in August 2019, Richard Surosco, M.D., essentially echoed Dr. McGuffin's finding that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. (R. 112). He also found she could sit and stand/walk up to 6 hours in each 8-hour workday, occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs, but never ladders, ropes or scaffolds. (R. 112-13). He also attributed the postural limitations to degenerative disc disease and obesity, but noted that Plaintiff had a normal gait and did not use an assistive device for ambulation. (R. 113-14).

### C. Testimony Before the ALJ

On October 28, 2020, ALJ Pflugrath questioned Plaintiff during the administrative hearing. (R. 43-63). The ALJ also heard testimony from the VE, Linda Augins. (R. 63).

#### 1. Plaintiff's Testimony

On direct questioning by the ALJ, Plaintiff testified that she lived with her daughter and her daughter's boyfriend, who both work full-time. (R. 45). She stated that she suffered from pain in her right arm and lower back, which limited her mobility. (R. 45-49). Her left arm was stronger, which she explained affected her ability to interact with children during previous employment as a daycare worker. (R. 45-46). She described her primary disabling condition as back pain, which required her to change positions every 30 minutes, and made bending over difficult. (R. 52-54, 62). She was able to drive short distances, do the dishes for about 10 minutes, but usually spent time playing electronic games on her phone, and spending time with her boyfriend. (R. 54). On examination by her attorney, she said she has to shift and move around when sitting for more than 30 minutes, and that this had "gotten worse" since the end of 2019. (R. 56). She described napping

7

up to two and a half hours per day, but also stated she could lift 10-15 pounds and walk the distance of about three houses. (R. 57-58). She described worsening of these symptoms also – estimating that in 2019 she could walk twice as far, and lift 20 to 25 pounds. (R. 58).

2.  **Testimony from the VE**

The ALJ also examined Vocational Expert (VE) Linda Augins. (R. 64-68). In response to a hypothetical posed by the ALJ, the VE testified regarding work available to a person with Plaintiff's prior experience who was capable of light work with various postural limitations, including frequent reaching from waist to shoulder level, but no overhead reaching with the left arm. (R. 64). The ALJ also limited the hypothetical individual to simple, routine work at a non-production pace as to tempo and capacity; persistent effort only on routine tasks with no more than occasional changes in task or work setting; and the ability to alternate sitting and standing occasionally at her workstation. (R. 64-65). The VE testified such limitations would preclude Plaintiff's past relevant work as a daycare provider. (R. 65). She also testified there were other jobs in the national economy which Plaintiff could perform, including parking lot cashier, recreation aide, and ticket seller. Id. The ALJ then added the hypothetical limitation to standing or walking no more than four hours in an eight-hour workday and the VE testified that would eliminate the position as ticket seller, but would still permit work as a toll collector, parking lot cashier, and recreation aide. (R. 65-66). In response to further questions by the ALJ, the VE stated that if the same hypothetical individual required more than two absences per month or was off task more than 15 percent of the workday, those additional limitations would preclude all work. (R. 67).

In her motion for summary judgment, Plaintiff presents only one challenge to the Commissioner's final decision. She argues the ALJ improperly analyzed the opinion evidence

8

from Dr. Quidgley-Nevares in the medical source statement completed in June 2020. Specifically, she claims the ALJ's opinion failed to adequately explain the consistency and supportability factors the rules required be examined, and his finding that the opinion was "not fully persuasive." As set forth below, after review, I find the ALJ complied with the rules and his explanation and citation to the medical record, provides ample basis for judicial review under the substantial evidence test. Accordingly, this Report recommends the court affirm the Commissioner's final decision.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and

must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

Plaintiff's brief identifies a single error in the ALJ's decision that she claims warrants remand. She contends that the ALJ improperly evaluated opinion evidence from her primary care physician, Dr. Quidgley-Nevares, and his nurse practitioner, P.A. Villaflor-Zitouni. As explained below, this Report finds no error in the ALJ's analysis. Accordingly, the Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

### A. Framework for Social Security Act Disability Evaluation

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Social Security Administration regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 404.1520(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4. Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5. Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The Social Security Administration considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings

and weighing the evidence rests with the ALJ. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

B.  **The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date in 2017 until the date last insured, December 31, 2019. (R. 24). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis and allied disorders, dysfunction of major joints, carpal tunnel syndrome, obesity, and depression. Id. At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments. (R. 25). The ALJ then developed a finding regarding Plaintiff's RFC. He determined Plaintiff was able

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant could stand/walk up to 4 hours in an 8-hour workday … occasionally climb ramps and stairs, stoop, kneel or crouch. … The claimant had to be allowed to alternate between sitting and standing positions at the workstation, [performing] only simple, repetitive, routine tasks and non-production-paced tasks as to tempo and capacity. [She] was limited to maintaining persistent effort only on routine tasks [among other mental limitations].

(R. 30). At step four, the ALJ concluded that Plaintiff could not perform any of her past relevant work as a daycare worker. (R. 32). At step five, the ALJ found there were other jobs in the national economy Plaintiff could perform, identifying both light and sedentary jobs within her RFC. (R. 33). The ALJ thus found that Plaintiff was not disabled through her date last insured of December 31, 2019. (R. 34).

C.  **The ALJ's RFC Finding and Assessment of Dr. Quidgley-Nevares' Opinions is Supported by Substantial Evidence.**

Plaintiff's only argument in this court asserts that the ALJ erred in determining her RFC because he failed to give proper weight to opinions from Dr. Quidgley-Nevares, Plaintiff's primary

care doctor.[3] Pl.'s Mem. (ECF No. 16, at 10). In determining whether the claimant has a medically determinable severe impairment, or combination of impairments, that would significantly limit the claimant's ability to work, the ALJ must analyze the claimant's medical records and any medical evidence resulting from consultative examinations or medical expert evaluations. 20 C.F.R. §§ 404.1512, 404.1527. If the medical opinions are inconsistent with each other or other evidence, the ALJ must evaluate the opinions and determine which are more persuasive. 20 C.F.R. § 404.1520c(a).

Under the rules, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." Id. Instead, the ALJ considers the overall "persuasiveness" of each opinion. Id. And while the ALJ may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability and consistency," § 404.1520c(b)(2). Here, the ALJ found the opinion from Dr. Quidgley-Nevares "not fully persuasive" because it was inconsistent with objective findings in the medical record, and not supported by the doctor's contemporaneous record. (R. 32). In addition, the ALJ observed that the opinion was rendered six months after the date last insured. Id. This evaluation, complied with the relevant rules and the resulting RFC finding, is supported by substantial evidence.

1. **The ALJ's evaluation of Dr. Quidgley-Nevares' opinions complied with the relevant rules, and his RFC finding is supported by substantial evidence.**

Plaintiff insists that the ALJ improperly considered and applied the factors of consistency and supportability to Dr. Quidgley-Nevares' opinions. Pl.'s Mem. (ECF No. 16, at 10-16).

---

[3] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff filed her claim on September 4, 2018, (R. 120), the new rules apply.

Defendant argues that the ALJ correctly analyzed the opinions, and that Plaintiff's arguments about supportability and consistency misapprehend the ALJ's obligations to explain his decision, and ignore the substantial evidence he cited in support of it. Def.'s Opp'n (ECF No. 19, at 19-27). As set forth below, I conclude the ALJ analyzed both supportability and consistency, and his RFC finding is supported by substantial evidence.

      **a.**    **The ALJ's analysis of the supportability factor is supported by substantial evidence.**

Supportability assesses whether the medical source supported the opinion with "objective medical evidence and supporting explanations," which increases the opinion's persuasiveness. 20 C.F.R. § 404.1520c(c)(1). Supportability requires at least some "objective medical evidence and supporting explanations," id., and providers can generally be expected to note abnormalities in their treatment records. See, Hyacinth L. v. Commissioner, No. 2:20cv641, 2022 WL 4483823, at *5 (E.D. Va. Sept. 27, 2022) (sustaining ALJ's assessment of medical opinion where provider "fail[ed] to point to specific findings to warrant additional limitations in light of other objective medical evidence"); cf. Riffe v. Saul, No. 1:20-cv-00448, 2021 WL 5138180, at *11 (S.D. W. Va. June 7, 2021) (reciting ALJ's expectation that treating providers would "note those abnormalities on mental status evaluations"). Because Dr. Quidgley-Nevares' opinion is presented in a check-box fashion, the specific limitations he assessed are not attributed to any objective medical record. (R. 1389-90). He has no corresponding notations or citation to his treatment records to support the disability limitations described in the form. Plaintiff fails to address this shortcoming, see generally Pl.'s Mem. (ECF No. 16, at 10-16), and it was reasonable for the ALJ to find Dr. Quidgley-Nevares' opinions unpersuasive without this evidence.

The only records cited by Dr. Quidgley-Nevares in support of his opinion included an MRI completed in September 2017 and Nerve Conduction Study from November 2019. The ALJ's

RFC analysis considered both these diagnostic tests and appropriately concluded that the medical records accompanying them did not support the severe limitations imposed by Dr. Quidgley-Nevares. The ALJ observed that the MRI showed "mild spinal canal stenosis," but an exam the following month produced only an abnormal gait, with 5/5 muscle strength and normal sensation. (R. 29-30 (citing R. 874)). The Nerve Conduction Study likewise showed "moderate carpal tunnel syndrome." (R. 30). But records from April 29, 2019, revealed normal sensation, coordination, gait and station with no numbness and 5/5 muscle strength. Id. (citing R. 1260). The ALJ also pin-point cited similar findings from an exam in November 2019. Id. (citing R. 1341). These specific citations to contemporaneous objective findings are adequate to sustain the ALJ's conclusion that the opinion was less persuasive because it was not supported by citation to the medical record.

Plaintiff identifies facts that would support an alternative finding, including treatment records noting that Plaintiff regularly complained of chronic pain in her low back, neck and left arm. Pl.'s Mem. (ECF No. 16, at 12 (citing R. 1272, 1276, 1370, 1374)). However, the court must defer to the ALJ's findings if supported by substantial evidence. Perales, 402 U.S. at 390; see also Lewis, 858 F.3d at 865. This appeal is not an opportunity to relitigate the case. If "conflicting evidence allows reasonable minds to differ as to whether [Plaintiff] is disabled," then the court defers to the ALJ. Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d at 635, 640 (7th Cir. 1987)).

In addition, Plaintiff was last insured in December 2019, (R. 24), and Dr. Quidgley-Nevares gave his opinion in June 2020, (R. 1389-92). In his analysis of supportability, the ALJ observed that the opinion was rendered six months after Plaintiff's DLI, and noted there was "no convincing evidence [Plaintiff] had the disabling limitations" even after the date last insured. (R.

15

32). This evaluation is supported by substantial evidence. Although Dr. Quidgley-Nevares provided treatment during the relevant time period, (R. 844-50, 1272-79, 1370-77), he does not state that his opinions are retroactive to the relevant time. And Plaintiff testified repeatedly that her condition significantly worsened between December 2019 and the hearing in October 2020. (R. 56-57). Dr. Quidgley-Nevares' treatment records, along with other treatment records before the ALJ, document this deterioration. Records before the DLI show that Plaintiff was healthier, with normal musculoskeletal and neurological findings. See, e.g., (R. 1260, 1274, 1308, 1346, 1372). And the ALJ cited specific records supporting his view that the post-DLI opinions were not supported by even the contemporaneous record. (R. 32) (citing R. 1362 from April 13, 2020, noting Plaintiff was independent for ADLs and mobility and that her pain was controlled except for one spot over her left sciatic nerve). Contrary to Plaintiff's argument, these citations inform the ALJ's conclusion that the limitations described in the medical source statement are not supported — regardless of whether they were intended to reflect her pre-DLI condition.

Plaintiff argues, under Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012), that evidence produced after the date last insured must be considered if it "permits an inference of linkage with the claimant's pre-DLI condition." Pl.'s Mem. (ECF No. 16, at 15) (citing Bird, 699 F.3d at 343). This is an accurate summary of Bird's holding, in which the court retrospectively considered evidence that "related to [the claimant's] history of impairments." Bird, 699 F.3d at 341. But Bird only applies when the later evidence links to Plaintiff's pre-DLI condition. See Parker v. Berryhill, 733 F. App'x 684, 687 (4th Cir. 2018) ("[T]he Bird court did not hold that post-DLI evidence is always relevant. Instead, we noted that only when a 'linkage' is found between the DLI condition and the post-DLI condition is such evidence relevant."); cf. Montgomery v. Chater, 107 F.3d 866, 1997 WL 76937, at *1 (4th Cir. 1997) (unpublished)

(observing that "treating physician's contemporaneous records . . . failed to corroborate his retrospective opinions"). The ALJ ruled out linkage here because Plaintiff's more recent records recorded findings that were "worse than those in November 2019." (R. 31) (citing R. 1398, showing July 2020 exam findings reflecting decreased left sided range of motion). And as detailed above, the medical records and Plaintiff's direct testimony support Plaintiff's deterioration after her DLI.[4] The ALJ's assessment of Dr. Quidgley-Nevares' 2019 opinion under the supportability factor complied with the relevant rules.

### b. The ALJ's evaluation of the consistency factor is supported by substantial evidence.

Consistency assesses whether the medical source's opinion is "consistent . . . with the evidence from other medical and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). While the regulations dictate that greater consistency increases persuasiveness, the court is focused here on whether the reasons the ALJ gave for discounting Dr. Quidgley-Nevares' opinion—the reasons he found the opinion <u>inconsistent</u> with the evidence—are supported. The ALJ found Dr. Quidgley-Nevares' opinion inconsistent with his treatment records which reflected normal strength, intact sensation, and a normal gait. See (R. 32). As discussed below, the ALJ rested his opinion on numerous relevant inconsistencies between Dr. Quidgley-Nevares' opinions and Plaintiff's overall medical treatment, each of which are supported in the record.[5]

---

[4] Plaintiff testified — on examination by her own attorney — that her abilities in 2019 were significantly greater than described in the Dr. Quidgley-Nevares opinion. Compare (R. 1390) (Quidgley-Nevares opining Plaintiff could "never" lift weight greater than 10 pounds in 2020) with (R. 19), (Plaintiff testifying that in 2019 she could lift 20 to 25 pounds).

[5] Plaintiff argues that the ALJ erred by selecting "only evidence that supported his conclusion while ignoring all evidence consistent with Dr. Quidgley-Nevares' opinion." Pl.'s Mem. (ECF No. 16, at 13). Cherry-picking occurs when an ALJ focuses on "a single treatment note that purportedly undermines [the source's] overall assessment of [the plaintiff's] functional limitations . . . ." Hudson v. Colvin, No. 12-cv-269, 2013 WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (quoting Punzio v. Astrue, 630 F.3d 704, 710 (7th

17

Quoting the opinion, the Commissioner states that "[t]he ALJ expressly found that the opinions were 'inconsistent with the objective findings in previous exams.'" Def.'s Opp'n (ECF No. 19, at 21, (citing R. 32)). The Commissioner observes these included care-providers' observations of a normal gait and muscle strength. Id. (citing e.g., R. 31, 834, 849, 860, 863). The ALJ also cited specific records reflecting normal muscle strength in arms and legs (R. 30, (citing R. 1260, 1231)). He cited records even after Plaintiff's DLI, noting that Plaintiff was active, alert, and in no acute distress. She had active functional range of motion in her cervical spine and in both arms. Although her lumbar range of motion was limited and she walked with an antalgic gait, the ALJ specifically noted these findings were worse than those in November 2019 during the period of insurance. (R. 31, (citing R. 1398)). These observations are adequate to satisfy the ALJ's duty to explain the inconsistencies which led him to find the Dr. Quidgley-Nevares statement less than fully persuasive.[6]

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment, (ECF No. 18), DENY Plaintiff's Motion for Summary Judgment, (ECF No. 15), and AFFIRM the Commissioner's finding of no disability.

## VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

---

Cir. 2011)). Here the ALJ did not cherry-pick because he identified more than a single inconsistency in Claimant's treatment records, and the record contains extensive medical evidence supporting his conditions.

[6] In a finding not challenged by Petitioner, the ALJ found the physical limitations imposed by the agency medical consultants "generally persuasive," but imposed greater limitations on the left upper extremity relying on the same examination findings and test results cited above. (R. 32).

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

November 18, 2022